# Chandley *v.* Cambridge Springs Borough, Appellant.

*Contract—Delay—Construction of waterworks—Borough.*

Where a person contracts with a borough to construct waterworks, he is not justified in delaying the work because, prior to the time when any money was due him, the borough had not sold its bonds, the proceeds of which were to be used in payment for the construction of the waterworks; but if the delay in completing the work was due to a default on the part of the borough in making the first and second payments under the contract, the contractor is not liable.

Argued April 29, 1902. Appeal, No. 122, Jan. T., 1902, by defendant, from judgment of C. P. Crawford Co., Sept. T., 1899, No. 22, on verdict for plaintiff in case of Chandley Brothers & Co. v. Cambridge Springs Borough. Before Mc-Collum, C. J., Mitchell, Dean, Fell and Potter, JJ. Affirmed.

Assumpsit on a construction contract. Before Wallace, P. J., specially presiding. For previous report of the case see 200 Pa. 230.

At the trial the main issue between the parties was as to the responsibility for a delay of three weeks in completing the work.

When W. H. Chandley, one of the plaintiffs, was on the stand, the following offer was made :

Plaintiffs' counsel propose to prove by the witness on the stand that the delay occasioned in completing the laying of the pipe, setting of the hydrants, valves and valve boxes arose from the neglect upon the part of the board during the months of July and August and the early part of September to provide the funds for the carrying out of its part of the contract for the erection of the waterworks, which fact was known to the contractor. That the contractor was thereby prevented from entering upon the execution of the contract in the expeditious manner contemplated, and that he was delayed in the final completion of his contract.

2. It is proposed to prove by the witness upon the stand that the increase in the quantity of work by reason of additions

made by the board required a greater length of time to complete it than that specified in the contract, and that he was entitled to this increase by the terms of the contract itself.

The Court: This for the purpose of avoiding the contract.

Plaintiffs' counsel: This for the purpose of explaining and excusing the delay, and for avoiding any damages to which the borough might otherwise be entitled.

Defendant's counsel object to the competency of this evidence as detailed in the offer—object to the competency of the offer.

The Court: Objection overruled, offer admitted and bill sealed, the court reserving the right after hearing it, if we think it ought to be withdrawn, to withdraw it.

Bill of exceptions sealed for the defendant. [1]

Plaintiffs' counsel: "Q. As to the first part of the offer, confine your explanation, what is your explanation as to the delay in the pipe laying, hydrant and valve setting, from the 1st of October to the 17th?"

Witness: "January—or July 13, when I went to Cambridge to begin contract, I made inquiry of the members of the council if they had sold their bonds and had the money, I made inquiry if they had their money, and they had not; I then took to considering the beginning of the contract, the construction of this work; I thought it was not policy as a contractor, due me or due the borough, to start it very strong at the beginning, on account of no money being in sight, as I seen no sale of bonds; I had had experience, and knew trouble—that don't matter—Q. Explain what happened. A. I went in and started the impounding well with a small force, at once; I delayed ordering my pipe, pumps, valves or hydrants, until I seen the money would be in sight; I, therefore, done nothing on the other parts of the work until after August 1; I then ordered— I thought the bonds would possibly be sold and a chance to get the money, and then we—"

The Court: Do not tell what you thought.

Plaintiff's counsel: What did you do?

Witness: I then ordered the pipe, pumps, standpipe, in the week in August for work; the reason I could not begin the pipe laying sooner than August 25, the pipe did not come in until the last part of the month, and of course, I could not start laying sooner than the 25th, on account that I delayed on

account of the money until August 1, therefore the finishing run three weeks over October 1; that is under the contract; I done that on my own free will and accord, as the best interests for every person, concerning the delay of the work.

The court charged in part as follows:

[I say to you as a matter of law, that when this contract was signed with the stipulation in it that monthly estimates were to be made and paid within ten days to Mr. Chandley, eighty-five per cent of it, he had a right to presume that the money would be coming to him at the proper time, and if he went there in July—I think the 13th—I may be mistaken in dates; do not take your dates from me; remember I simply use them to apply the law; you take them as you remember them—when he went there in July and met this council, and if they told him—you must determine what was said and done there, because you have two witnesses here as to that, and the evidence is not very profuse, I am frank to say, the evidence in that line—but from what you have you must determine what caused the delay. If that delay was caused by the borough not having the money nor the means to pay him, and if he did not get his pipe by reason of their fault, then they could not say that that was his fault altogether.] [2]

[There is one other phase of the case, and that is this: There was evidence here of monthly statements, estimates being made and amounts fixed and no objection raised at those particular times. You heard the discussion as to what was called a waiver. That was an offer. The court ruled it out, and we say to you now that those statements being filed by that engineer and accepted and paid by the borough, according to contract, reserving fifteen per cent, did not waive their rights to claim these penalties. While we say to you as a matter of law that these statements and payments are some evidence, not of waiver, but of admission on the part of the borough, of the correctness of the work, admissions of some evidence—what evidence is for you to say—we say simply some; we cannot say how much, but it is some that ought to go to the jury to take into consideration with the other matters, when you come to weigh it as a whole, and determine the good faith of the suit brought, and the defense made.] [3]

[Now, in all cases of this kind, where you come to the interpretation of contracts, as to the fulfillment of a contract in order to maintain or allow a penalty or damages such as stipulated in this contract, substantial performance of the contract is what is required. I will simply illustrate by taking the standpipe, what I mean by substantial compliance. When you come to take the standpipe—and I use this as an illustration, because it strikes me to be a fair one under all the items that are here—you determine under that contract what was necessary to be done in order to make this standpipe so that it could be used as stipulated in the contract. If you determine from the evidence that placing the standpipe there, erecting and riveting it so as to hold water ready to use, is all that was necessary; that there was some little touches of painting, either outside or in, or that the entire painting was necessary to make a substantial completion; then you can determine what was that substantial completion in order to allow the use of it for that which it is intended to be used, and that would be the time. If you determine that it was necessary to be painted inside in order to be used in substantial compliance with the contract, then it would be time when it was finished inside. You men must determine the question of what was a substantial compliance, a substantial finishing in compliance with that contract, so far as this question goes, in order to determine the measure of damages, or rather the number of days for which default was made by this plaintiff, if any.] [4]

Defendant's third point was as follows:

There is no evidence that the borough authorities requested the plaintiffs to delay commencing the work under the contract because of alleged delay by the borough in providing funds for payment of the plaintiffs under contract, and if there was some delay in providing funds, such delay did not justify the plaintiffs in delaying the commencement or completion of the work at the times required by the several detailed specifications. *Answer:* This point is refused. That is a question that we believe ought to be submitted to you, and we submit it as we have instructed you in our general charge. [5]

Verdict and judgment for plaintiff for $3,114. Defendant appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2–5) above instructions, quoting them.

*George F. Davenport*, for appellant.

*R. H. Jackson*, with him *William W. Henderson*, for appellee.

OPINION BY MR. JUSTICE FELL, May 19, 1902:

When this case was here before it was decided that the contract under which the defendant's waterworks were constructed did not give to the engineer in charge the power to determine whether certain amounts agreed upon in advance as liquidated damages for delay in completion should be deducted from the plaintiff's claim. See 200 Pa. 230. At the second trial this question was submitted to the jury. Both parties were in default under the terms of the contract, the plaintiff in not completing the works in the time fixed, and the defendant in not making payments promptly as the work progressed. The plaintiff claimed also an additional time allowance under the terms of the contract because of an increase in the quantity of work required.

The main contention was as to the responsibility for a delay of three weeks. At the time fixed for the commencement of the work, the borough had not succeeded in selling the bonds it had issued to provide the means of payment. The plaintiff began at once the building of an impounding well, but delayed ordering the pipe and pumps because the bonds had not been sold. If this delay was the sole cause of the noncompletion in time, the responsibility would rest with him. He took the chance of prompt payment when he entered into the contract, and was not justified in delaying the work because the borough did not have the money in its treasury in advance of the time it was due him. But the borough was in default in not making the first and second payments provided for by the contract. After its failure to pay the plaintiff might well hesitate to order expensive materials and machinery, and to the extent to which the delay in the completion of the work was due to its default, the plaintiff was relieved of responsibility. This question together with that of substantial compliance was fairly submitted to the jury, and we find nothing in the assignments that requires a reversal.

The judgment is affirmed.